Cheshire,
Oct. 3, 1911.

### Vigneault *v.* Winchester Tannery Co.

In an action of negligence against employers, certain evidence held sufficient to sustain a finding that the injuries complained of resulted from the defendants' failure to properly instruct the plaintiff as to dangers concerning which he was ignorant and the risk of which he did not assume.

The fact that a question propounded to a witness suggested the incompetent matter sought to be thereby adduced is not sufficient cause for reversal, if the objectionable inquiry was promptly withdrawn, the jury were instructed to disregard it, and it is affirmatively found that the conduct of counsel did not render the trial unfair.

Where a party to an action calls as witnesses persons in his employ, the adverse party may properly comment upon the relationship, as bearing upon the credibility of the testimony and the weight to be given it.

Case, for negligence. Trial by jury and verdict for the plaintiff. Transferred from the October term, 1910, of the superior court by *Mitchell*, J.

During the cross-examination of the defendants' superintendent, the plaintiff's counsel asked the following question: "Is this tannery company of yours one of the Armour or Swift Company's?" An exception was taken, whereupon the court excluded the question, counsel withdrew it, and the jury were instructed to disregard it. The defendants also excepted to remarks of the plaintiff's counsel in closing argument and to the denial of their motions for a nonsuit and the direction of a verdict in their favor. The evidence tended to prove the facts hereinafter stated.

The plaintiff was injured October 30, 1909, while oiling a ventilating fan situated on the third floor of the defendants' tannery. He entered their employment July 2 of that year and was engaged to do carpenter work. On the day before he received his injury, the regular oiler being absent, he was ordered by the defendants' foreman to oil the shops. After he had oiled a portion of them it was ascertained that the fan in question was not in operation, and he was then told that he need not oil it. On the following day he was again directed to oil the shops and to oil everything he saw.

The fan was set in the northerly wall of the mill and toward its easterly end. It function was to blow the air out of the mill through a hole in the wall. It was five feet in diameter, and the shaft upon which it ran was about thirty-five inches from the floor. Power was transmitted to the shaft by a belt which came up through the

floor and passed over a pulley upon the shaft.   Between this pulley and the fan was another pulley from which power was transmitted to a fan at the west end of the mill.   Just north of the latter pulley was a box or bearing for the shaft, which was supported by an iron standard and steadied from above by two pieces of iron which extended in a V-shape from the box on the shaft up over the blades to a circular iron box surrounding the rim of the fan.   In that part of the box on the shaft north of the iron braces were two oil-holes, one on the east and one on the west side of the shaft; and in that part of the box south of the braces were also two oil-holes similarly situated.

On the fan were six blades of sheet steel extending from the shaft to the rim or circumference of the fan.   These blades project by an increasing ratio from a short distance at the shaft to fifteen inches at the rim.   They were over eleven inches from the iron braces measuring along the shaft, while at distances of nineteen and eighteen inches from the shaft and toward the circumference of the fan they were distant from the braces from one and three quarters to three and one quarter inches.   When the fan was in motion all parts of it appeared to be from ten to twelve inches from the iron braces, and the steel blades could not be seen.   Inside each end of the box on the shaft was a reservoir into which the two oil-holes on the respective ends of the box entered.   It was not necessary in order to oil the shaft to put oil into the holes, except on one side.   There was a railing on the west and south sides of the shaft shutting off an approach to the fan, but on the east side the approach was unobstructed.   By standing at a jog in the railing on the west side of the shaft, oil could be safely put in the holes in the box on that side of the shaft, both inside and outside the iron braces, when the fan was in motion.   This was the customary way of oiling the shaft when the fan was in motion.   When it was at rest it was customary for the oiler to go between the power belt and the fan on the easterly side of the shaft, and oil all the holes in the box on both sides of the shaft.   The holes on the east side could not be seen or oiled from the jog in the railing on the west side.

No instructions were given the plaintiff as to where he should go to oil the fan, nor how he should oil it.   When he came to the fan it was in motion.   As he approached the space east of the shaft, he saw the two oil-holes on that side and supposed he had to oil them.   The fan appeared to be ten or twelve inches back from the iron braces beyond which he had to oil one of the holes, and there

was apparently plenty of room. The plaintiff approached the shaft, raised the oil-can to the hole, and was struck by the fan on the elbow and injured. He was sixty-two years old and had worked to some extent both inside and outside of mills, but had never worked in a tannery and knew nothing about ventilating fans. He had never before been in that portion of the mill where the fan was located, but had seen it when in motion from the outside of the mill. The jury had a view and saw the fan at rest and in motion.

*Cain & Benton (Mr. Benton* orally), for the plaintiff.

*Clarke C. Fitts* and *Harold E. Whitney* (both of Vermont), and *John E. Allen (Mr. Allen* orally), for the defendants.

BINGHAM, J. The plaintiff bases his right of recovery upon the defendants' failure to instruct him as to the safe and proper method of oiling the fan and to warn him of the dangers attendant upon the performance of his duty in case he undertook to oil it when in motion from the easterly side of the shaft. The defendants, in support of their exceptions to the denial of their motions for a nonsuit and a verdict, contend that there was no evidence from which it could reasonably be found that they were negligent and that the plaintiff was in the exercise of due care; also that the dangers attendant upon the oiling of the fan were so apparent that he must be held to have assumed the risk as a matter of law.

Upon the question of the defendants' negligence and the plaintiff's care, the evidence was that the safe and customary way of oiling the fan, when in motion, was for the oiler to stand at the jog in the rail west of the shaft and oil the westerly holes in the box with the can provided for the purpose. The holes in the box on the east side of the shaft could not be seen or oiled by one standing in that position. There was an oil reservoir inside each end of the box, into which the oil flowed when the holes were oiled on either side, so that it was only necessary to oil the holes in the box on one side of the shaft. The plaintiff was not informed and did not know of the safe and customary method of oiling the box, and did not know that both sets of holes did not require oiling.

When one stood easterly of the shaft, the oil-holes on that side could be readily seen. There was an unobstructed approach to the shaft from that side; and the fan, which revolved very rapidly, appeared to be ten or twelve inches north of and away from the irons

supporting and staying the box, and a sufficient distance north of the northeasterly hole in the box to permit of its being safely oiled. This was the situation as it presented itself to the plaintiff when he went to oil the fan. The appearances, however, were deceptive. The fact was that there were steel blades on the fan which were unobservable when the fan was in motion, and which projected such a distance southerly from the frame of the fan that their extreme ends came within an inch and three quarters or thereabouts of the iron braces at the box, and rendered the work of oiling from the east side so hazardous that it was not customary to do so, except when the fan was at rest.

The instructions to the plaintiff were general—to oil the shops. He was not told to oil the fan, or where he should go to do the work. There was no rail obstructing the approach to the oil-holes on the east, as there was on the west side. The plaintiff, observing these surroundings and relying upon them, approached the shaft from the east side; and while in the act of raising the can to oil the northeasterly hole in the box, he was struck by the invisible knives on the fan and injured. From this evidence it could be found that the defendants were negligent in failing to properly instruct the plaintiff, that their failure was the proximate cause of his injury, and that he was without fault.

Moreover, it cannot be said that the danger was so open and apparent that the plaintiff must be held as a matter of law to have assumed the risk. In addition to the evidence above narrated, it appears that the plaintiff had never been in that portion of the mill where the fan was located until he went there to oil it at the time he received his injury, and that he had not seen the fan at rest. It is true he had worked about box factories to some extent and fed boards into a planing machine, but this is only evidence bearing upon the question whether a man of his experience might not know and appreciate the danger to which he was subjected if he attempted to oil the fan from the east side. It is not conclusive, however.

If the question asked the defendants' superintendent was improper, the defendants took nothing by their exception; for the question was withdrawn, the jury were instructed to disregard it, and it has been found that it did not render the trial unfair. *Lee v. Dow*, 73 N. H. 101.

The argument of the plaintiff's counsel would seem to be based upon the evidence and unobjectionable. The defendants were a corporation. The general supervision of their business was

entrusted to a superintendent, and there were different departments in charge of foremen. Smith was the superintendent, and Handy was the foreman of the mechanical department, under whom the plaintiff worked. Both of these men were called as witnesses for the defendants, as were other employees of theirs. As bearing upon their credibility and the weight to be given their testimony, it was competent for counsel to remind the jury that these men were employed by the corporation as heads of one or of all its different departments and were responsible for their proper management. *Genest* v. *Company*, 75 N. H. 509. This was all the argument came to.

*Exceptions overruled.*

All concurred.